## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS
### CIVIL ACTION
### NO. 07-CV-12335-DPW

### TRUE RELIGION APPAREL, INC.
and
### GURU DENIM, INC.
Plaintiffs

vs.

### TRUE APPAREL COMPANY
Defendant


## MEMORANDUM IN SUPPORT OF
## MOTION OF TRUE APPAREL COMPANY IN LIMINE
## TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF PHILIP GREEN

Now comes the defendant True Apparel Company and respectfully moves this Honorable

Court to exclude the proposed expert opinions and testimony of Philip Green. The Expert Report

of Philip Green dated November 5, 2008 and Supplemental Expert Report of Philip Green dated

January 25, 2009 are filed herewith in the Affidavit of Robert Wolfe filed under seal dated

February 16, 2009.

## HISTORY OF RELEVANT PROCEEDINGS:

The plaintiffs filed a Complaint and alleged that the defendant's domain name

"truejeans.com," trademark "True Jeans," and corporate name "True Apparel Company"

infringed the trademarks and service marks of True Religion Apparel Inc. and Guru Denim, Inc.

(Counts I, II, III), were likely to be confused with trademarks and service marks of the plaintiffs,

and violated the Lanham Act, 15 U.S.C. §1125 (Counts IV and V). The plaintiffs also alleged

1

violations of state law. (Counts VI and VII) (Complaint, Doc. #1) The plaintiffs alleged that their trademarks including the term "True Religion" were infringed and diluted by the defendant's use of the terms "True Apparel Company" and "TrueJeans.com." (Complaint, Doc. #1)

The plaintiffs license their "True Religion" marks to third parties. Plaintiffs' Answers to Defendant's First Set of Interrogatories, No. 8.

The defendant "… is a retailer of denim jeans and provider and inventor of online fit technology and service that matches customers to the brands and styles of jeans that fit them best. " Defendant's Answers to Plaintiffs' First Set of Interrogatories, No. 4.

In response to the plaintiffs' request for the production of documents, the defendant provided 2005, 2006 and 2007tax returns and Quickbook printouts for 2008 to the plaintiffs on July 11, 2008. The documents itemized deductions. (Affidavit of Philip Green dated 2/3/09 filed under seal, Doc. 98.)

An Amended Scheduling Order issued on August 20, 2008 directing the filing of expert reports by the plaintiffs on November 5, 2008 and the defendant by November 26, 2008. Expert discovery was to be completed by December 17, 2008. (Doc. #43)

The original Expert Report of Philip Green was produced on November 5, 2008. Mr. Green opined at page 5 that "Plaintiffs' damages based on Defendant's sale of apparel amount to $1,234,211, excluding any relevant and provable deductible costs." Mr. Green acknowledged at paragraph 25, page 5, that the figure represented the defendant's "gross revenues." Mr. Green states in paragraph 26, page 5, that "To date, I have not been provided with documents to support elements of cost or deduction claimed."

The Supplemental Expert Report of Mr. Green was provided on or about January 25, 2009, nearly _three months after the due date of November 5, 2009_. At paragraph 4, page 1, Mr. Green

acknowledged that plaintiffs' counsel originally withheld *"... additional documents that I understand were produced by Defendant and contain its revenues and costs. These documents are True Apparel Company's tax returns for 2005, 2006 and 2007 and a print-out for 2008 from its Quickbooks system."* (emphasis added) Mr. Green then belatedly took the documents withheld by counsel and "… analyzed TAC's purported revenues and costs." Par. 5, page 1. His revised testimony at page 2 included the following opinions:

<u>Supplemental Opinion 1</u> – Assuming evidence is introduced by the Defendant regarding costs, its profits from sales made using the infringing trademark amount to at least $659,828 through December 2008, excluding prejudgment interest

<u>Supplemental Opinion 2</u> – Alternatively, Defendant's unjust enrichment can be measured by the payments to its common shareholders in the form of salary or other compensation. Through 2007, these payments amount to at least $363,828 through December 2008, excluding prejudgment interest.

Neither the original opinion nor the supplemental opinion considered the licensing revenues charged by True Religion to third parties for the use of their "True Religion" marks. Neither report discussed any lost sales or revenues experienced by the plaintiffs. Neither report considered the value that True Apparel contributed to the sales by using technology to match customers to the brands and styles of jeans that fit them best.

**<u>DISCUSSION</u>:**

    **1.)**     **<u>The Supplemental Report should be Stricken as Late</u>.**

Counsel for the plaintiff in conscious disregard of the scheduling order initially withheld tax returns and financial data of the defendant from their economic expert and filed an original "report" devoid of any substantive damage analysis - even though the Amended Scheduling Order dated August 20, 2008 required the plaintiffs to file their expert reports by November 5, 2008.  The defendant relied on the alleged intent of the plaintiffs to comply with the scheduling

order, concluded that the "expert report" was fatally flawed, and decided to forego a deposition of the plaintiffs' "expert."

Thereafter the plaintiffs cynically filed a more complete supplemental report which relied on financial data provided by the defendant the previous summer – long before the November 5, 2008 due date for expert reports. This "gamesmanship" should be rewarded by an order to exclude the testimony contained in both reports.

 **2.)**  <u>**The Original and Supplemental Reports do not meet Minimum Standards.**</u>

The Reference Manual on Scientific Evidence speaks specifically to the "Estimation of Economic Losses in Damage Awards" in cases involving intellectual property and trademark infringement. Pages 316 to 322. The infringer is to be liable to compensate for the injury that results from the infringement and the infringer's profit. *Id.* at 316, fn. 47 citing <u>Walker v. Forbes, Inc</u>., 28 F.3d 409, 412 (4th Cir. 1994). In other words, the plaintiffs must prove causation and profit.

"Where a trademark is licensed in connection with the sale of marked goods on a royalty basis, then damages can be calculated based on a reasonable royalty." *Id.* at 317. "Under patent law, apportionment is implicit in the reasonable-royalty framework; a defendant would not pay more for a patent license than its contribution to profit. Under copyright law, where damages include the defendant's gain measured as its revenue or profit, apportionment may be a major source of disagreement." *Id.* at 321. In this instance, the plaintiffs' "expert" made no effort to calculate a "reasonable royalty" for the alleged use by the defendant of the "True Religion" mark.

When claiming lost profits, the "… defendant … can seek to offset such damages by deducting for the expense of producing the infringing goods or by apportioning the profits

attributable to the infringing mark and those attributable to the intrinsic merit of his or her product." Reference Manual, p. 318. "Where the protected work or technology is not the only feature or selling point of the defendant's product, there may be disagreement about apportionment." *Id*. at 320.In the original report, the "expert" made no effort to deduct expenses associated with the sale or value the technology associated with matching the jeans to fit the customer.

Expert testimony must be based on valid principles and methods that are reliably applied to the facts in issue and which will assist the trier of fact. Fed.R.Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). It must be "grounded in the methods and procedures of science." Reference Manual on Scientific Evidence (2nd), Federal Judicial Center 2000, p. 12. [N]othing in either Daubert or the Federal Rules of Evidence require a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Joiner, 522 U.S. *supra* at 146.

The benefit of the proposed testimony must outweigh "'the danger of unfair prejudice, confusion of issues, or misleading the jury, or the considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' Fed.R.Evid. 403" Tuli v. Brigham & Women's Hospital, … F.Supp.2d …, 2009 WL 27303 *supra* at par. 1. An expert must do "… more than …(put)… his imprimatur on the defendant's case. *See*, e.g. Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195 (3rd Cir. 2006)" *Id.* "Clearly, a 'highly opinionated statement' amounting to a witness' general belief is simply not helpful to the jury and is unduly prejudicial. See 1 Henry Brandis et al, McCormick on Evidence §12 (6th ed. 2006." *Id.* The proposed expert testimony is precisely what Fed.R.Evid.403 sought to prevent. The proposed testimony is nothing more than "Take my word for it; in my judgment, based on solely the cold record and not the testimony of

witnesses, (there is a likelihood of confusion.)" <u>Tuli v. Brigham & Women's Hospital</u>, 2009 WL 27303, *supra* at sec.1.

**CONCLUSION:**

The Opinions reflected in the Report and Supplemental Report of Phillip Green should be excluded for failure to conform to the Amended Scheduling Order and the minimum standards for giving such Opinions. Additionally, the Opinions should be excluded under the standards articulated in Fed.R.Evid. 403. If the Opinions are excluded, the plaintiffs are in no position to complain.

TRUE APPAREL COMPANY

By its Attorney:

<u>/s/ Robert S. Wolfe</u>

Robert S. Wolfe, Esq.
Robert Wolfe Associates, P.C.
7 Kimball Lane, Building B
Lynnfield, Ma. 01940
BBO #532500
(781) 246-4545 Tel.

RWAssociates@Prodigy.net

Dated:  February 16, 2009

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 16, 2009.

/s/ Robert S. Wolfe

Robert S. Wolfe, Esq.