UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---------------------------------------------------------X
TRUE RELIGION APPAREL, INC. and    )
GURU DEMIM, INC.,                  )   Civil Action No. 07-12335-DPW
Plaintiffs,                        )
                                   )   OPPOSITION TO DEFENDANT'S
v.                                 )   MOTION IN LIMINE TO EXCLUDE
                                   )   EXPERT TESTIMONY OF PAUL
TRUE APPAREL COMPANY,              )   DUNAY
Defendant.                         )
---------------------------------------------------------X

## I.  INTRODUCTION

The plaintiffs, True Religion Apparel, Inc. and Guru Denim, Inc. ("True Religion"), served upon the defendant, True Apparel Company's ("True Apparel"), a Rule 26 Written Report of Paul Dunay on November 5, 2008, summarizing the subject of Mr. Dunay's testimony that would assist the jury in understanding complex issues relating to e-commerce and marketing.  On February 2, 2009, the defendant filed a motion *in limine* to exclude the expert testimony by Mr. Dunay.  The defendant's motion, at best, suggests topics for cross examination of Mr. Dunay.  It does not in any way provide a basis for excluding Mr. Dunay, who will provide testimony that will be beneficial to the jury.  The plaintiffs hereby oppose the defendant's motion *in limine* to exclude the expert testimony of Mr. Dunay.

## II.  FACTS

Mr. Dunay has over twenty years of experience in the field of marketing and ten years in the field of e-commerce.  For the past five years, Mr. Dunay has been responsible for the various trademarks of Bearing Point, Inc. and has designed numerous surveys in connection with the

business. Many of Mr. Dunay's surveys have been the subject of his blog posts, which are listed on pages 56 to 61 of his Written Report provided to the defendant on November 5, 2008. Docket Item ("D.I.") 90, ¶ 2, Exh. 1 ("Dunay Report").

Mr. Dunay provided opinions in his Report as to the effect of the defendant's website on consumers searching for the products of True Religion. He based his analysis on his experience in the field and factual information pertaining to the defendant's website, including a web log provided by the defendant regarding the activities of visitors to the defendant's website. The web log includes information about visitors that arrived at the defendant's website when searching using the terms "true" and "religion," such as how much time each visitor spends on the website and whether they became a registered user of the defendant. Dunay Report at pages 28-32.

On November 5, 2008, Mr. Dunay provided his Written Report regarding his findings as to the activities of the visitors to the defendant's website, and the plaintiffs served the Report upon the defendant. The Report included findings as to the common use of the term "Trues" to refer to products of True Religion based on numerous real-world instances of such references, and findings as to the behavior of consumers arriving at the defendant's website upon searching for True Religion, based on Mr. Dunay's analysis of the defendant's web log information.

On November 26, 2008, the defendant provided to the plaintiffs a Written Report by Aaron Brough that addressed a survey directed to the use of internet search terms, and on January 15, 2009, Mr. Dunay supplemented his Report to address various flaws in the defendant's survey. D.I. 74, ¶ 2, Exh. 1 ("Brough Report"); D.I 90, ¶ 3, Exh. 2 ("Supplemental Dunay Report").

III.   ARGUMENT

A witness is qualified to provide expert testimony if he has the "knowledge, skill, experience, training, or education" in the relevant field of expertise, such that his proffered opinions are likely to be of assistance to the jury.  *See* Fed. R. Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999); *Daubert v. Merrell Pharmaceuticals, Inc.*, 509 U.S. 579, 589-592 (1993).  Because most jurors are not versed in the details of e-commerce or marketing, Mr. Dunay's testimony is likely to be of valuable assistance to the jury in understanding issues relating to those details.

The defendant, in its motion *in limine*, asserts that Mr. Dunay should not be able to testify based on an alleged lack of survey or trademark experience.  The defendant supports its assertion merely by pointing to the titles of Mr. Dunay's listed publications and speaking engagements and claiming that none specifically reference surveys or trademarks.  Apparently, the defendant did not read or otherwise examine those publications.  While the titles of those publications may not explicitly use the word "survey," Mr. Dunay does, in fact, have many years of experience designing surveys during his time directing the marketing operations for BearingPoint, Inc., a large IT services firm.  Many of these surveys are the subject of Mr. Dunay's publications listed in his Report.

In addition to attacking Mr. Dunay's credentials based on a supposed lack of survey experience, the defendant further attacks Mr. Dunay for allegedly failing to base his opinions on reliable data or methods.  In doing so, the defendant enumerates a list of statements from Mr. Dunay's Report, and provides responses to those statements.  Each of the defendant's responses is a topic that should be the subject of cross examination of Mr. Dunay, and should go to the weight of Mr. Dunay's testimony.  The following list addresses those statements and responses

and provides reasons as to how Mr. Dunay's statements will benefit the jury in understanding the issues, how Mr. Dunay based his statements on reliable data or methods, or why the defendant's criticism is irrelevant to the issue of Mr. Dunay's testimony.[1]

(1)     The defendant criticizes Mr. Dunay's alleged lack of use of a testable <u>scientific</u> method in his finding that True Religion's customers often use the term "Trues" to refer to True Religion's products. But a determination as to the reliability of an expert's opinions is not limited to the use of a <u>scientific</u> method. "Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. … In other cases, the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).

> [W]hether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest upon an experience confessedly foreign in kind to the jury's own.

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (internal quotations and brackets omitted). Mr. Dunay is a specialist in e-commerce and online marketing, and his application of common nicknames or slang to terms used to search for products on the internet rests upon his specialized experience. Thus, application of a scientific method is not required.

(2)     The defendant criticizes Mr. Dunay's statement that one searching for True Religion using the terms "True" and "Jeans" would have a 50% chance of arriving at the wrong site, and states that there is no evidence that one would use those terms. But, Mr. Dunay's statement does not concern whether one would use those terms. It addresses the chances of

---

[1] The defendant, in its conclusion, also erroneously states that the First Circuit requires survey evidence in the absence of actual confusion and actual damages. Not only is the defendant completely mistaken, as the plaintiffs have explained in other filings, but the defendant does not provide any authority for its assertion.

arriving at a site based on the number of search result links pointing to the parties' site upon using those terms. The defendant's arguments in response to Mr. Dunay's statement goes to the weight of Mr. Dunay's testimony, and would properly be the subject of cross examination.

(3) The defendant criticizes Mr. Dunay's findings that visitors to the defendant's website who arrived as a result of searching with the terms "true" and "religion" were likely misled. The defendants base their criticism on Mr. Dunay's supposed lack of data or testable scientific method. However, Mr. Dunay's findings were based on data from the web log provided by the defendant and his experience in e-commerce. Specifically, Mr. Dunay based his findings on the percent of visitors who were new to the defendant's website and on the amount of time the visitors spent on the site. Testimony as to the interpretation of the web log will be of great assistance to the jury.

(4) After accusing Mr. Dunay of giving opinions without reliable data, the defendant then acknowledges Mr. Dunay's consideration of the web log data, and then proceeds to put forth arguments regarding his opinions. The argument, however, goes to the weight of Mr. Dunay's testimony and should be the subject of cross examination.

(5) The defendant quotes a factual statement by Mr. Dunay regarding the percent of total traffic of the defendant's website, which is not opinion, but fact. The defendant then provides argument regarding the fact. This is irrelevant, however, to the issue of whether Mr. Dunay should be allowed to testify.

(6) The defendant attacks Mr. Dunay's opinion regarding the confusion of the 77% of visitors to the defendant's website who are new visitors, and provides an alternative conclusion. But the alternate conclusion is something that, again, would go to the weight of Mr. Dunay's testimony and that should be the subject of cross examination.

(7) The defendant quotes a factual statement by Mr. Dunay regarding the number of visitors looking for True Religion that arrived at the defendant's website and became registered users of the defendant. The defendant then provides argument concerning the fact, which is irrelevant to the issue of whether Mr. Dunay may testify.

(8) The defendant attacks Mr. Dunay's opinion regarding his prediction that the converted users will result in future sales, asserting that it is not supported by any statistical data. But Mr. Dunay based the prediction on the web log data of the defendant's website and his knowledge and experience concerning e-commerce. Moreover, what is significant to a likelihood of confusion is that prospective purchasers of True Religion have become registered users of the defendant, not whether sales have occurred.

(9) The defendant also attacks Mr. Dunay's opinion that those user conversions were caused by their confusion concerning the parties marks, asserting that it is not supported by any statistical data. But again, the opinion is based on the statistical data regarding the web activity of the defendant's site, as well as Mr. Dunay's specialized e-commerce experience. The defendant further provides an alternative conclusion, but, again, that goes to the weight of Mr. Dunay's testimony and would be a subject for cross examination.

(10) The defendant leaves out a significant part in quoting Mr. Dunay. The defendant alleges that Mr. Dunay stated that "sales … have come TrueJeans.com." But what Mr. Dunay stated is that "[the web log] information relates to traffic and sales that have come to TrueJeans.com." Allegations based in misquotes are of no value in determining the defendant's motion. In addition, the defendant erroneously focuses on proof of actual sales, proof that is not required for likelihood of confusion and is wholly irrelevant to the issue of whether Mr. Dunay's testimony will assist a jury.

(11) The defendant erroneously treats Mr. Dunay's quoted statement regarding the distinctiveness of the plaintiffs marks as being in connection with a likelihood of confusion, but the statement actually address factors that are relevant to the dilution of the plaintiffs marks by the defendant.

Upon receiving the Written Report of Aaron Brough that addressed a survey directed to the use of internet search terms, Mr. Dunay supplemented his Report based on his analysis of the survey. The defendant, in its motion *in limine*, attacks the statements Mr. Dunay made in his Supplemental Report. In doing so, the defendant, again, enumerated a list of Mr. Dunay's statements and provided responses to those statements. The following list addresses those statements and responses and indicates how Mr. Dunay's statements will benefit the jury in understanding the issues, how Mr. Dunay based his statements on reliable data or methods, or why the defendant's criticism is irrelevant to the issue of Mr. Dunay's testimony.

(1) The defendant suggests that Mr. Dunay is a hypocrite in that he claims that Mr. Brough does not make any connection between Question 4 of the survey and likelihood of confusion, and then quotes Mr. Brough's statement that Question 4 is meant to show a lack of confusion. But Mr. Dunay only quoted Mr. Brough's description of Question 4, and went on to explain that Question 4 did not actually address the issue of confusion, even though Mr. Brough may have intended that it do so.[2]

(2) The defendant complains that Mr. Dunay does not provide support for his analysis of Mr. Brough's Question 4 and his conclusion that it does not address how respondents choose search terms, but Mr. Dunay based his analysis on the question itself, its place in the overall

---

[2] Question 4 does not address the issue of confusion, but only asks which one of the words in the term "True Religion Brand Jeans" makes it unique.

survey, and his past experience with surveys.  Thus, Mr. Dunay's analysis of Question 4 will assist the jury in understanding the potential flaws in the defendant's survey.

(3)     The defendant criticizes Mr. Dunay's statement concerning two-word search terms, asserting that he does not provide any support for his statement.  But Mr. Dunay explicitly cited the basis for that statement, which was the Keane *et al.* 2008 article first cited by the defendant.  *See* page 11 of Dunay Supplemental Report.

(4)     The defendant criticizes Mr. Dunay's statement that the "look and feel" of the parties' websites is not relevant, and provides arguments to the contrary.  But these arguments do not concern the issue of whether Mr. Dunay should be able to testify.  At best, the arguments go to the weight of Mr. Dunay's testimony and should be the subject of cross examination.  The defendant further asserts that True Religion makes "no effort to match consumers with jeans that fit."  That claim, however, is utterly absurd, as True Religion asks consumers for information regarding their size and fit when selling jeans on the internet.

(5)     The defendant mischaracterizes Mr. Dunay's statement that people searching using the term "True" and "Jeans" will receive results including both parties' websites, and asserts that he offers no support that users will only search using those terms.  But this is not what Mr. Dunay said.  Mr. Dunay said that if people searched using those terms, then those people would receive results including both parties' marks.  The defendant goes on to argue that its survey shows that 76% of people include the word "Religion" in their searches; but this, again, is merely argument going to the weight of the testimony.  It should be noted, however, that even if 76% of people include the word "Religion," it would mean that 24% do not, supporting the plaintiffs' position.

(6) The defendant complains that Mr. Dunay offers no justification for his opinion that Zoomerang.com is better suited for surveys regarding consumer-packaged goods, and not the products of True Religion; but this opinion is based on Mr. Dunay's experience with survey providers, and the arguments put forth by the defendant go to the weight of the testimony, not its admissibility.

(7) The defendant criticizes Mr. Dunay's statement regarding the survey being able to include a 54 year-old male having a household income of $75,000, which Mr. Dunay says is not part of True Religion's demographic. The defendant claims that nothing in <u>Mr. Dunay's original Report</u> excludes such a person. But Mr. Dunay's Report was not written as a guide to preparing a survey. It is up to the survey designer to assure that the proper universe is surveyed.

(8) The defendant attacks a statement by Mr. Dunay that refers to reasons that are "discussed more fully below" as being unsupported. But the statement is supported by the discussion that follows the statement. *See* page 6 of Dunay Supplemental Report.

(9) The defendant claims that Mr. Dunay provides no logic for his conclusion that the repetition of the term "True Religion Brand Jeans" in the survey questions leads respondents to answer in a certain way; but the logic is in the analysis of the question as including repeatedly only one of the marks at issue.

(10) The defendant criticizes Mr. Dunay's statement that people would remember the words "True" and "Jeans," more than the word "Religion," by referring to its survey that supposedly shows that 76% of people use the word "Religion"; but this argument by the defendant should go the weight of Mr. Dunay's testimony. His experience in marketing informs his opinion the impression marketing creates. Further, Mr. Dunay based this reasoning at least in part on the common use of the term "Trues" to refer to True Religion and his expertise in e-

commerce. Moreover, it should be noted that the defendant's survey indicates that 24% of respondents did not use the term "Religion" even when the survey repeatedly used the term "Religion" in its questions, which serves to support the plaintiffs' position.

(11)    Mr. Dunay provides an analysis of the survey and points out that 28% of the survey's respondents chose the defendant's site when searching for True Religion. The defendant provides argument suggesting a different conclusion, but this argument is irrelevant to the issue of Mr. Dunay's testimony, and would only go to the weight of his testimony.

Much of the defendant's criticism is merely argument put forth by the defendant in response to various statements made by Mr. Dunay in his Report. But the arguments are simply directed to the issues to be determined by the jury. They do not support the defendant's position that Mr. Dunay should be excluded from testifying at trial.

Mr. Dunay has expressed opinions related to the behavior of online consumers based on his specialized experience in e-commerce and marketing, and based on data regarding those consumers. Mr. Dunay's opinions, based on his experienced interpretation of the data, will be helpful to the members of the jury in understanding issues that are outside the reach of their common knowledge. Therefore, Mr. Dunay should be allowed to present his opinions at the trial of this case.

## IV.    CONCLUSION:

The plaintiffs respectfully request that the defendant's motion *in limine* to exclude Mr. Dunay from providing expert testimony be denied.

|  |  |
|---|---|
|  | TRUE RELIGION APPAREL, INC. and GURU DENIM, INC. |
|  | By their attorneys, |
|  | /s/ Susan G. L. Glovsky |
|  | Susan G. L. Glovsky (BBO# 195880) |
|  | Patrick A. Quinlan (BBO# 667183) |
|  | Lindsay M. Hopkins (BBO# 671229) |
|  | Hamilton, Brook, Smith & Reynolds, P.C. |
|  | 530 Virginia Road, P.O. Box 9133 |
| Dated: February 23, 2009 | Concord, Massachusetts 01742 |
|  | Telephone:  (978) 341-0036 |
|  | Fax:  (978) 341-0136 |
|  | susan.glovsky@hbsr.com |
|  | Attorneys for Plaintiffs |

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 23, 2009.

                                       /s/ Susan G. L. Glovsky
                                       Susan G. L. Glovsky

869985_1